IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TASAI BETTS, | No. 1:21-CV-01309 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| D. VARNER, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MARCH 31, 2022

Plaintiff Tasai Betts is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon). He filed the instant Section 1983[1] action in July 2021, claiming First and Fourth Amendment violations by various state grievance officers and SCI Huntingdon officials.[2] Betts also alleges state-law negligence claims.[3] Presently pending is Defendants' motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6).[4] The Court will deny Defendants' motion but will dismiss several of Betts' claims under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).
[2] *See generally* Doc. 1.
[3] *Id.* ¶¶ 55-57.
[4] Doc. 9.

granted.

I.      BACKGROUND

The gravamen of Betts' complaint is that his constitutional rights were violated with respect to the handling of his legal mail.  He alleges that on February 12, 2020, two pieces of privileged legal mail were received at SCI Huntingdon and, pursuant to Pennsylvania Department of Corrections (DOC) policy, the following day he was called to the designated pick-up area to receive this privileged correspondence.[5]  Upon arrival at the designated area, Betts provided his identification and began the legal mail distribution process with defendants A. McCloskey and R. Wertz.[6]

Betts avers that these two correctional officers entered the first piece of privileged mail into the computerized tracking system, performed ion scanning on the letter, found no evidence of illicit substances, turned the letter over to Betts, and gave him verbal permission to return to his housing unit.[7]  Prior to exiting the pick-up area, Betts claims that he noticed a second piece of privileged mail addressed to him that was sitting on the table in front of the officers.[8]  Betts advised them that this legal mail was also for him, so they began to process this

---

[5]   Doc. 1 ¶¶ 13-15.
[6]   Id. ¶¶ 16-17.
[7]   Id. ¶¶ 17-18.
[8]   Id. ¶ 19.

2

letter as well.[9]

However, while processing the second letter, the correctional officers noted that the mail had been "red flagged" in the computer system and would be subject to additional inspection and testing.[10] Betts asked to at least be permitted to visually inspect the contents of the letter, and claims that A. McCloskey and Wertz acquiesced.[11] After viewing the letter's contents, Betts then inquired as to how long the additional inspection would take, and asserts that the officers told him he could expect to receive the mail later that day.[12]

Betts alleges that the letter was not delivered to him that day, nor at any time during the following six days.[13] On day six, Betts filed an administrative grievance about the missing privileged correspondence, seeking its prompt delivery and compensatory damages.[14] Defendant J. McCloskey was assigned as the first-level grievance officer, and on March 4 and 5, 2020, he interviewed Betts about the February 13 mail incident.[15] Betts recalls that, during the second exchange, J. McCloskey tried to convince him that the second piece of mail was not addressed to Betts but was for a different prisoner at another correctional facility, which Betts

---

[9] Id. ¶¶ 19-20.
[10] Id. ¶ 20-21.
[11] Doc. 1 ¶¶ 22-23.
[12] Id. ¶ 24.
[13] Id. ¶ 26.
[14] Id. According to the copy of the grievance Betts later provided, it appears that Betts filed his grievance on February 17, 2020, four days after the incident occurred. See Doc. 13-1 at 2.
[15] Id. ¶¶ 27-29.

disputed.[16] Betts asserts that J. McCloskey then informed him that he was being investigated for smuggling drugs into SCI Huntingdon, but that if he withdrew his grievance, J. McCloskey would "make the investigation go away."[17] Betts avers that he refused this proposition.[18]

According to Betts, within hours of rejecting J. McCloskey's proposed deal, defendant A. Eberling—acting on behalf of or in concert with J. McCloskey, Wertz, A. McCloskey, and "others"—filed a false misconduct charge accusing Betts of attempting to smuggle drugs into SCI Huntingdon.[19] Betts avers that he was sanctioned to 90 days in solitary confinement for this misconduct.[20]

On March 18, 2020, Betts received J. McCloskey's initial review response to the grievance, which denied relief.[21] Betts appealed that denial to defendant Kevin Kauffman, Superintendent of SCI Huntingdon.[22] In the appeal, Betts requested, among other things, a copy of the privileged correspondence tracking log and the closed-circuit video footage from the February 13, 2020 incident, both of which J. McCloskey claims to have reviewed during the grievance investigation.[23] Kauffman denied Betts' appeal and evidentiary requests on May 8, 2020, primarily

---

[16]  *Id.* ¶¶ 29-30.
[17]  Doc. 1 ¶¶ 33-34.
[18]  *Id.* ¶ 35.
[19]  *Id.* ¶ 37.
[20]  *Id.* ¶ 38.
[21]  *Id.* ¶¶ 39-40.
[22]  *Id.* ¶ 42.
[23]  Doc. 1 ¶¶ 41, 45.

relying on J. McCloskey's initial-review rationale.[24] Betts then lodged a final appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), which defendant D. Varner—Chief Grievance Officer—denied on June 16, 2020.[25]

Betts filed suit in this Court in July 2021, naming as defendants Varner, Kauffman, A. McCloskey,[26] J. McCloskey, Eberling, Wertz, K. Grassmyer, and A. Wakefield.[27] He asserts the following constitutional tort claims: (1) a Fourth Amendment violation against all Defendants for seizing and permanently withholding the second piece of privileged mail[28]; (2) a First Amendment violation against all Defendants except Eberling and Grassmyer for "interference with" attorney-client communication by seizing and withholding his legal mail[29]; and (3) a First Amendment retaliation claim against Eberling, J. McCloskey, A. McCloskey, and Wertz for the allegedly false misconduct charge and punishment.[30] Betts also alleges state-law negligence claims against all Defendants except Eberling.[31]

---

[24] *Id.* ¶ 46.
[25] *Id.* ¶¶ 5, 47-48.
[26] Defendant A. McCloskey is presumed deceased and thus has been dismissed from this case. *See* Doc. 16.
[27] *See* Doc. 1 ¶¶ 5-11. Betts asserts that defendant K. Grassmyer is the "Mailroom Supervisor" who participated in the investigation during the initial grievance review. *Id.* ¶¶ 9, 41. Defendant A. Wakefield is the "Facility Grievance Coordinator" and is alleged to be responsible for "the overall administration of the grievance system" at the prison. *Id.* ¶ 11.
[28] Doc. 1 ¶¶ 50-51.
[29] *Id.* ¶ 53.
[30] *Id.* ¶¶ 59-62.
[31] *Id.* ¶¶ 55-57.

Defendants move to dismiss all Section 1983 claims against Varner, Kauffman, Wakefield, and J. McCloskey for lack of personal involvement. They also seek dismissal of the negligence claims against all named Defendants on the basis of Eleventh Amendment sovereign immunity. Defendants' Rule 12(b)(6) motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[32] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[33] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[34]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[35] At step one, the court must "tak[e] note of the elements [the]

---

[32] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[33] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[34] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[35] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

plaintiff must plead to state a claim."³⁶ Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.³⁷ Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."³⁸ Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."³⁹

Because Betts proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"⁴⁰ This is particularly true when the *pro se* litigant, like Betts, is incarcerated.⁴¹

## III. DISCUSSION

Defendants point to several purported deficiencies in Betts' complaint, which they maintain require dismissal of certain claims with prejudice. The Court, however, identifies other, more fundamental shortcomings with Betts' *pro se*

---

³⁶ *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
³⁷ *Id.* (quoting *Iqbal*, 556 U.S. at 679).
³⁸ *Id.* (quoting *Iqbal*, 556 U.S. at 679).
³⁹ *Iqbal*, 556 U.S. at 681.
⁴⁰ *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
⁴¹ *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

pleading that obviate Defendants' argument regarding personal involvement.[42] The Court will address the sufficiency of each of Betts' claims in turn.

### A.     Fourth Amendment Claim

Betts asserts that the seizure and permanent withholding of his legal mail violates his Fourth Amendment rights. The Fourth Amendment to the United States Constitution, in pertinent part, protects against "unreasonable searches and seizures."[43] However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells[.]"[44] Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.[45]

Betts' Fourth Amendment argument could potentially be construed as claiming that his personal property was wrongfully taken, thus implicating a Fourteenth Amendment claim of deprivation of property without due process of

---

[42] *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (explaining that the Court "shall dismiss"—at "any time" during the litigation—a case that it determines "fails to state a claim on which relief may be granted").

[43] U.S. CONST. amend IV.

[44] *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).

[45] *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).

law.[46] This constitutional tort, however, has its own significant limitations. Most acutely, this type of due process claim is unavailable when "adequate state post-deprivation remedies are available."[47]

Betts' complaint is silent as to whether adequate state post-deprivation remedies exist for the permanent confiscation of his legal mail, but the Court notes that state tort law likely provides a remedy for claims like those Betts is asserting.[48] Betts, in fact, asserts state-law negligence claims in his complaint. The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results.[49] The Court thus declines to construe Betts' implausible Fourth Amendment claim as a Fourteenth Amendment due process property deprivation claim because, no matter how the claim is styled, dismissal is required.[50]

---

[46] *See Hudson*, 468 U.S. at 530, 533.
[47] *Id.* at 533.
[48] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); *see also Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies).
[49] *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).
[50] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.     First Amendment Claims

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[51]  Betts raises two different First Amendment claims in his complaint.  He first asserts that several Defendants "interfered" with his right to communicate with his attorney by confiscating a piece of his legal mail.  He then claims that multiple prison officials retaliated against him for filing a grievance about this issue.  Only Betts' retaliation claim can survive Rule 12(b)(6) scrutiny.

#### 1.     First Amendment "Interference"

It is not entirely clear what type of First Amendment claim Betts is trying to assert concerning alleged interference with his legal mail.  The only constitutional claim that seems even remotely plausible from Betts' allegations is denial of access to the courts.[52]  If Betts is attempting to raise such a claim, his complaint is clearly insufficient.

---

[51] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[52] In documents that Betts attached to his brief in opposition to Defendants' motion to dismiss, he claimed that the confiscation of his legal mail was prohibiting him from timely prosecuting a criminal appeal.  *See* Doc. 13-1 at 2, 5, 7, 11.  The Court does not rely on these documents to assess the sufficiency Betts' complaint, only to decipher what type of claim Betts may be trying to assert.  The Court further observes that, as Betts' complaint describes an isolated incident, he is not alleging a "pattern and practice" type of legal-mail interference claim.  *See, e.g.*, *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006); *Fortune v. Hamberger*, 379 F. App'x 116, 120 (3d Cir. 2010) (nonprecedential) (noting that district court "correctly determined that a single instance of interference with an inmate's mail is not sufficient to constitute a First

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[53] Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[54] To adequately plead an access-to-courts claim that is backward-looking in nature,[55] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[56] The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[57]

When judged against these legal guideposts, Betts' access-to-courts claim is plainly deficient. Betts has not alleged that he suffered an actual injury (*i.e.*, a lost, nonfrivolous legal claim), nor has he pled facts showing that he has no other remedy for the purported loss. Betts' claim is further frustrated by the fact that he has not explained how failure to turn over a single legal letter—which he admits he

---

Amendment violation" (citing *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996))).
[53] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis*, 518 U.S. at 346).
[54] *Id.* (citing *Lewis*, 518 U.S. at 354-55).
[55] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).
[56] *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[57] *See Christopher*, 536 U.S. at 416-17.

was permitted to review—could unconstitutionally impinge on his access to the courts. Consequently, the Court must dismiss this initial First Amendment claim,[58] but will grant Betts leave to amend in the event that he can plead the requisite facts to state a plausible access-to-courts claim.

### 2. First Amendment Retaliation

Betts' claim for retaliation stands on firmer footing. To state a First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[59] Betts alleges that Defendants[60] retaliated against him for filing a grievance by issuing a false misconduct against him and, as a result of the misconduct, Betts spent 90 days in solitary confinement.

Defendants do not challenge any of the elements of Betts' retaliation claim. Instead, they argue that J. McCloskey had no personal involvement[61] beyond

---

[58] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).
[59] *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[60] Betts names Eberling, J. McCloskey, Wertz, and A. McCloskey in this retaliation claim. However, as noted earlier, A. McCloskey is presumed deceased and has been dismissed from this case. *See* Doc. 16.
[61] Claims under Section 1983 require personal involvement of the named defendant. *Dooley*, 957 F.3d at 374. Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or "actual

adjudicating the initial grievance.  This assertion, however, is belied by the allegations in the complaint.  Betts avers that J. McCloskey informed him of the drug-smuggling investigation and offered to make it "go away" if Betts withdrew his grievance.  According to Betts, within hours of refusing this *quid pro quo*, a false misconduct charge was filed against him for attempting to smuggle illicit substances into SCI Huntingdon.  This type of alleged conduct is sufficient at the pleading stage to implicate J. McCloskey in the retaliation claim.  The Court further notes that Betts alleges that Eberling filed the false misconduct charge, which likewise states sufficient personal involvement.

Accordingly, Betts' First Amendment retaliation claim can proceed against Eberling and J. McCloskey, as Betts has described each Defendant's role in the purported constitutional violation.  Betts, however, has not plausibly described any conduct by Wertz that would demonstrate personal involvement in the retaliation.  Betts simply states, in conclusory fashion, that Wertz was "acting in concert" with the other named Defendants to "cause false misconduct charges to be filed" against him.[62]  This type of conclusory allegation is insufficient to meet the pleading requirements set forth in *Ashcroft v. Iqbal*.  The Court will dismiss this claim

---

knowledge and acquiescence"; however, such averments must be made with "particularity." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[62]   Doc. 1 ¶ 60.

13

against Wertz but provide leave to amend so that Betts, if he is able, can plead a sufficient factual basis for Wertz's alleged involvement in the retaliation.

### C. State Negligence Claims

Defendants contend that Eleventh Amendment sovereign immunity bars Betts' state-law negligence claims against the six Defendants identified in this claim: Varner, Kauffman, J. McCloskey, Wertz, Grassmyer, and Wakefield. They argue that these Defendants were acting within the scope of their employment when the alleged events took place, and therefore they are immune from suit. Betts counters that Defendants' actions were not within the scope of employment, and thus Defendants are not immune from his negligence claims.

Review of Betts' complaint, however, provides a simpler answer to the sovereign immunity question. Pennsylvania's General Assembly has specifically carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors.[63] The third statutory exception to sovereign immunity applies to negligent acts related to "personal property" in the "care, custody or control" of Commonwealth parties.[64] It is difficult to conceive of a reason why Defendants' custody of Betts' legal mail does not fall into this third exception, and Defendants have provided none. The Court, therefore, will deny Defendants'

---

[63] *See generally* 42 PA. CONS. STAT. §§ 8521, 8522(b).
[64] *Id.* § 8522(b)(3).

motion to dismiss Betts' state-law negligence claims, as these claims are not barred by Eleventh Amendment sovereign immunity.

### D. Official Capacity Claims

Betts' complaint sues each Defendant in his or her "individual and official" capacities.[65] However, the Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[66] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[67] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[68] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief."[69]

---

[65] Doc. 1 ¶¶ 5-11.
[66] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[67] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[68] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[69] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

On its face, Betts' complaint appears to seek prospective injunctive relief, as he requests a transfer to a different prison.[70] But upon closer inspection, this remedy is not the type of prospective injunctive relief contemplated for official capacity claims against state officers. Rather, to meet the *Ex Parte Young* exception to sovereign immunity, the injunctive relief sought must be "to remedy an ongoing violation of federal law."[71] Betts' desired injunctive relief is not targeted at ending an ongoing violation of federal law. This is not to say that Betts' requested relief is improper, only that it does not meet the *Ex Parte Young* Eleventh Amendment exception. Accordingly, the official capacity claims against all Defendants must be dismissed.

## IV. LEAVE TO AMEND

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act] should receive leave to amend unless amendment would be inequitable or futile."[72] Betts' Fourth Amendment claim will be dismissed with prejudice because leave to amend would be futile. As explained above, Betts' allegations cannot make out a Fourth Amendment violation in the prison setting. The Court will likewise dismiss with prejudice Betts' claims against Defendants in their official capacities, as those claims are barred by

---

[70] Doc. 1 at p. 31. Betts also seeks expungement of the allegedly false misconduct from his disciplinary record, but that relief is retrospective, not prospective.
[71] *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark*, 344 F.3d 335, 345 (3d Cir. 2003).
[72] *Grayson*, 293 F.3d at 114.

sovereign immunity. The Court will grant leave to amend for Betts' First Amendment access-to-courts claim. He may also, if able, replead his First Amendment retaliation claim to include allegations demonstrating Wertz's personal involvement.

If Betts chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The complaint should set forth Betts' claims in short, concise, and plain statements, and in sequentially numbered paragraphs. It should name proper defendants, specify the offending actions taken by a particular defendant, be signed, and indicate the nature of the relief sought. If Betts chooses not to amend his pleadings, his case will proceed on the following two claims: (1) First Amendment retaliation against J. McCloskey and Eberling in their individual capacities only; (2) state-law negligence against Varner, Kauffman, J. McCloskey, Grassmyer, Wertz, and Wakefield.

## V.     CONCLUSION

Based on the foregoing, the Court will deny Defendants' motion (Doc. 9) for partial dismissal under Federal Rule of Civil Procedure 12(b)(6).  Nevertheless, the Court will dismiss portions of Betts' complaint—as more fully set forth above—pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge