## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TASAI BETTS, | No. 1:21-CV-01309 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| D. VARNER, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

### DECEMBER 16, 2022

Plaintiff Tasai Betts is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon).  He filed the instant Section 1983[1] action in July 2021, claiming constitutional violations by various state grievance officers and SCI Huntingdon officials.  Presently pending is Betts' motion to compel discovery pursuant to Federal Rule of Civil Procedure 37.[2]  The Court will grant in part and deny in part Betts' motion.

## I.    BACKGROUND

Betts asserts that, in late 2021, he submitted requests for production of documents (RPDs) to defendant McCloskey and interrogatories to defendant

---

[1]  42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See generally* Doc. 26.

Eberling.[3]  He takes issue with several of Defendants' responses to these discovery requests.  Specifically, Betts contends that McCloskey's responses to RPD numbers 2 and 8 are incomplete and that Eberling's responses to interrogatory numbers 6, 9, 10, and 11 are insufficient.[4]

## II.   STANDARD OF REVIEW

It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the district court's discretion.[5]  Thus, the Court's decisions regarding the conduct of discovery, including whether to compel disclosure of materials sought in discovery, will only be disturbed upon a showing of an abuse of discretion.[6]  A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[7]  Rule 26(b)(1) provides for a broad scope of discovery.  Accordingly, courts often—and appropriately—liberally apply discovery rules.[8]  Nonetheless, a "valid claim[] of relevance or privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1).[9]

---

[3]   *See generally* Docs. 34-1, 34-2.

[4]   *See* Doc. 26 at 1-2.

[5]   *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).

[6]   *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

[7]   FED. R. CIV. P. 26(b)(1).

[8]   *See Clements v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing *Great W. Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994)).

[9]   *See McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 192-93 (M.D. Pa. 2011).

## III.   DISCUSSION

Betts' motion to compel concerns six specific discovery requests directed to McCloskey and Eberling.  The Court will address each dispute in turn.

### A.   McCloskey's RPD Responses

Betts first asserts that McCloskey did not properly respond to RPD number 2.  In that RPD, Betts requested "[t]he complete prison records of all grievances [and] documents filed on you for retaliation and inadequate investigations."[10]  This RPD is both overly broad and seeks irrelevant information.  First, there is no starting or ending date specified, nor does Betts confine the request to time periods during or even near the dates of the incidents alleged in his lawsuit.  Moreover, Betts appears to be seeking information that will purportedly establish that McCloskey "committed similar—if not worse—acts in the past" related to his treatment other inmates.[11]  The problem with this assertion is that Betts is seeking prior-act evidence without establishing how such evidence is relevant to his claims other than by showing propensity, which of course is an impermissible basis for the admission of other-act evidence.[12]  Because Betts has failed to show that his request is relevant to his lawsuit and because his request is clearly overly broad, his motion to compel will be denied.

---

[10]   Doc. 34-1 at 2.
[11]   Doc. 26 at 1.
[12]   *See* FED. R. EVID. 404(b)(1).

Betts next claims that McCloskey failed to properly respond to RPD number 8.  In that request, Betts sought the "CCTV footage of the strip search area of the visiting room where [McCloskey] summoned [Betts] on March 5, 2020 . . . and presented [Betts] with a Grievance Withdrawal Form."[13]  Defendant McCloskey responded that "no responsive materials exist," *i.e.*, no such CCTV video footage exists.[14]  Betts argues that McCloskey failed to provide a reason why this video does not exist.[15]  While Betts is certainly free to present such a question to McCloskey (for example, in a follow-up interrogatory), his argument does not undermine the validity of McCloskey's response to this RPD.  If video footage does not exist, it cannot be produced.  Moreover, Betts did not seek an explanation in his RPD in the event that no CCTV video footage were available.  Accordingly, Betts' motion to compel will be denied as to this request as well.

## B.   Eberling's Interrogatory Responses

Betts takes issue with four interrogatory responses from Eberling.  In interrogatory number 6, Betts asked Eberling, "During your investigation of [Betts], when did he communicate with Erica Winters?"[16]  Betts argues that, in Eberling's response, Eberling "failed to disclose . . . *how* [Betts] communicated

---

[13]   Doc. 34-1 at 3.
[14]   *See* Doc. 34-3 at 9.
[15]   The Court notes that Betts admits that he did not seek preservation of this video evidence until almost two years after the date of the incident, *see* Doc. 40 at 4, presumably far beyond the Pennsylvania Department of Corrections' video record retention limits.
[16]   Doc. 34-2 at 3.

with Erica Winters, even if it was indirect communication."[17]  First, Betts did not

ask "how" he communicated with Erica Winters in his interrogatory.  Second,

Betts' criticism of Eberling's response is one that can easily be rectified by follow-

up discovery rather than a motion to compel.  If Betts desires to know how the at-

issue communication took place (and if that information is within Eberling's

knowledge), Betts can simply ask that question directly to Eberling via a follow-up

interrogatory.  Eberling, in fact, states that he would not oppose responding to such

an additional interrogatory served on him by Betts.[18]

In interrogatory number 9, Betts asked Eberling, "What date and time did

[Betts] discuss—with any of the parties involved in Misconduct No.: D520841—

driving to Pittsburgh to pick up 'cards'?"[19]  Eberling responded with three specific

dates—February 9, 2020, March 1, 2020, and March 2, 2020—and the method of

communication.[20]  Betts does not explain in his motion, supporting brief, or reply

brief how Eberling's response is deficient.  Furthermore, if Betts seeks additional

information or clarification regarding Eberling's response, he can include a follow-

up question in a second set of interrogatories.

In interrogatory number 10, Betts asked Eberling, "What date and time did

[Betts] attempt to introduce a dangerous or controlled substance into SCI

---

[17]  Doc. 26 at 2.
[18]  *See* Doc. 34 at 7.
[19]  Doc. 34-2 at 3.
[20]  *See* Doc. 34-3 at 18.

Huntingdon facility during your investigation of him?"[21]  Eberling responded by first objecting to the question as being "vague, overbroad, and unduly burdensome," and then citing to DOC policy explaining that "an attempt is the same as the act."[22]  Betts is correct that Eberling's response to this interrogatory is insufficient.  Betts' question is not vague, overly broad, or unduly burdensome, and Betts explicitly uses the phrase "attempt to introduce" when referring to the at-issue misconduct.  Eberling must answer this question to the best of his knowledge.

Finally, in interrogatory number 11, Betts asked Eberling, "When did [Betts] ever possess a dangerous or controlled substance during your investigation of him?"[23]  Eberling responded that Betts has a misconduct history of possessing controlled substances on October 25, 2019, and August 24, 2018.[24]  This is a valid response to Betts' interrogatory.  If Betts meant to specify that his question relates only to the investigation at issue in the instant lawsuit, he must draft his questions with more specificity.  Once again, Betts' concerns can easily be addressed in a follow-up interrogatory.

Betts' motion to compel regarding Eberling's interrogatory responses, therefore, will be denied as to all questions except interrogatory number 10.  Eberling must supplement his response to this question.

---

[21]  Doc. 34-2 at 3.
[22]  Doc. 34-3 at 19.
[23]  Doc. 34-2 at 3.
[24]  Doc. 34-3 at 20.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Betts'

motion to compel as more specifically set forth above.  An appropriate Order

follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge