## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TASAI BETTS,

          Plaintiff,

    v.

D. VARNER, *et al.*,

          Defendants.

No. 1:21-CV-01309

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 14, 2024

Plaintiff Tasai Betts is currently incarcerated at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville).  He filed the instant Section 1983[1] action in July 2021, claiming constitutional and state-law violations by various prison officials during his incarceration at a different state prison.  Defendants move for summary judgment on Betts' remaining Section 1983 and state-law tort claims.  For the following reasons, the Court will grant Defendants' Rule 56 motion as to Betts' Section 1983 claims and will decline to exercise supplemental jurisdiction over his remaining state-law claims.

---

[1]    42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    FACTUAL BACKGROUND[2]

During all times relevant to the claims underlying this lawsuit, Betts was

incarcerated at SCI Huntingdon.[3]  Betts is now housed at SCI Frackville.[4]  In his

initial complaint, Betts alleged that various SCI Huntingdon officials unlawfully

interfered with a piece of his legal mail and then retaliated against him for filing a

grievance related to the handling of this mail.[5]  He also asserted state-law

negligence claims with respect to the alleged confiscation of the legal letter.[6]

Defendants moved for partial dismissal of Betts' complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).[7]  The Court denied that motion but *sua*

*sponte* dismissed several of Betts' Section 1983 claims for failure to state a claim

---

[2]    Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements."  *Id.*  Defendants filed a properly supported statement of material facts.  *See* Doc. 87.  Betts responded to this statement.  *See* Doc. 101.  Many of Betts' responses, however, are not supported by citations to the record and instead contain nothing more than argument or allegations.  This directly contravenes Local Rule 56.1.  *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts*, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence*." (emphasis added) (internal quotation marks and citations omitted)).  Defendants' statements of material facts, therefore, are deemed admitted unless properly countered by Betts with citations to competent record evidence or plainly contradicted by the record.  *See* LOCAL RULE OF COURT 56.1.
[3]    Doc. 87 ¶ 1.
[4]    *Id.* ¶ 3.
[5]    *See generally* Doc. 1.
[6]    *See id.* ¶¶ 55-57.
[7]    Doc. 9.

for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[8]  Specifically, the Court dismissed with prejudice Betts' Fourth Amendment claim and his official capacity claims, and dismissed without prejudice his First Amendment retaliation claim against defendant R. Wertz and his First and Fourteenth Amendment access-to-courts claim.[9]  Betts was given 21 days to file an amended complaint with respect to the claims that were dismissed without prejudice.[10]

Betts eventually filed an amended complaint.[11]  That pleading, however, violated this Court's explicit directions by including a Fourth Amendment claim that had already been dismissed with prejudice.[12]  Additionally, Betts attempted to include Section 1983 claims against new defendants, but those claims were dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) as facially barred by the statute of limitations.[13]  Finally, Betts' access-to-courts claim was dismissed with prejudice because he had failed to cure the numerous pleading deficiencies identified in this Court's March 31, 2022 Memorandum.[14]

Defendants filed an answer to the claims that remained.[15]  Those claims are: (1) First Amendment retaliation against defendants J. McCloskey, A. Eberling, and

---

[8]  *See generally* Docs. 22, 23.
[9]  *See* Doc. 23 ¶ 2(a)-(d).
[10]  *See id.* ¶ 3.
[11]  Doc. 33.
[12]  *See* Doc. 37 ¶ 3.
[13]  *Id.* ¶ 1 & n.4.
[14]  *Id.* ¶ 4 & n.7.
[15]  Doc. 38.

Wertz[16]; (2) state-law negligence against defendants K. Grassmyer, A. Wakefield, K. Kauffman, D. Varner, Wertz, and McCloskey[17]; and (3) "civil conspiracy to retaliate" against defendants McCloskey, Wertz, Eberling, and Kaufmann.[18]

In November 2023, Defendants moved for summary judgment on the remaining claims.[19]  After several extensions of time, Betts filed his brief in opposition and responsive statement of material facts.[20]  On February 26, 2024, Defendants timely filed a reply brief.[21]  The Rule 56 motion is now fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[22]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are

---

[16]   Doc. 33 ¶¶ 77-84.

[17]   *Id.* ¶¶ 73-75.

[18]   *Id.* ¶¶ 85-97.  Betts also asserted civil conspiracy claims against other defendants, (*see id.* ¶ 85), but those claims were dismissed with prejudice in this Court's July 14, 2022 Order because they were facially barred by the statute of limitations.  *See* Doc. 37 ¶¶ 1-2.

[19]   Doc. 86.

[20]   Docs. 100, 101.

[21]   Doc. 102.

[22]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[23]   Fed. R. Civ. P. 56(a).

'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[24]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[25]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[26]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[27]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[28]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[29]

## III.   DISCUSSION

Betts' primary Section 1983 claim alleges First Amendment retaliation.  He contends that, in response to filing a grievance with respect to the handling of his

---

[24]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[25]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[26]  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[27]  *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[28]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[29]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

legal mail, McCloskey, Wertz, and Eberling retaliated by filing a false misconduct against him.  He further claims that these same Defendants and Kauffman conspired to violate his First Amendment rights, presumably raising a Section 1983 conspiracy claim.  Betts additionally asserts state-law negligence claims against multiple Defendants.

Defendants maintain that Betts cannot carry his Rule 56 burden for numerous reasons.  First, they contend that Betts failed to exhaust administrative remedies.  They next assert that Betts cannot establish various elements of his *prima facie* retaliation case and that, even if he could, Defendants still prevail because "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[30]  Defendants also assert that Betts' negligence claims are barred by sovereign immunity.  Finally, they posit that many of the forms of relief Betts seeks (*e.g.*, compensatory damages, declaratory relief, and injunctive relief) are unavailable or moot.  The Court will address the relevant arguments in turn.

### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA)[31] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged

---

[30]   *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citation omitted).
[31]   42 U.S.C. § 1997e *et seq.*

constitutional violations.[32]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[33]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

is incarcerated.[34]

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.[35]  If informal resolution attempts do not solve the problem,

the first step is to file a written grievance (using form DC-804, Part 1) with the

Facility Grievance Coordinator within 15 working days after "the event upon

which the claim is based."[36]  An adverse decision by the grievance coordinator

must be appealed to the Facility Manager within 15 working days of the initial-

review response or rejection.[37]  Finally, an adverse decision by the Facility

Manager must be appealed to "Final Review" with the Secretary's Office of

---

[32] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[33] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[34] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[35] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[36] DC-ADM 804 § 1(A)(3)-(5), (8).

[37] *Id.* § 2(A)(1).

Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[38]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[39]

Defendants' exhaustion argument regarding Betts' retaliation claim is straightforward. They maintain, quite simply, that Betts never asserted a retaliation claim (or conspiracy or negligence[40] claims, for that matter) to DOC officials in any relevant grievance, appeal, or disciplinary filing.

The only relevant grievance that Betts filed under DC-ADM 804 and fully exhausted is grievance number 850652.[41] That grievance was filed on February

---

[38] *Id.* § 2(B)(1).

[39] *Id.* § 1(A)(11).

[40] Because the Court declines to exercise supplemental jurisdiction over the state-law claims, *see infra* Section III(D), it will not address the issues of whether state-law claims must be exhausted under the PLRA or whether Betts exhausted his negligence claims. *See, e.g.*, *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (nonprecedential) (declining to decide whether state-law claims must be exhausted under PLRA and holding that district court should have declined to exercise supplemental jurisdiction over those claims).

[41] *See* Doc. 87 ¶¶ 6-13. Betts alleges that he filed a grievance in March 2020 regarding retaliation based on the purportedly fabricated misconduct but that the grievance was rejected because

17, 2020, and complained only about purportedly improper legal mail handling on February 13, 2020.[42]  Nowhere in that grievance or its appeals does Betts assert, mention, or even hint at a retaliation claim against McCloskey, Eberling, or Wertz.[43]

Betts counters that there were no administrative remedies available to him.[44] He first notes that DC-ADM 804 precludes an inmate from grieving a misconduct, so a retaliation claim alleging that he was issued a false and retaliatory misconduct is not grievable under DC-ADM 804.  Betts appears to be referring to Section 1(A)(7) of DC-ADM 804, which states that "[i]ssues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, 'Inmate Discipline' and/or DC-ADM 802, 'Administrative Custody Procedures.'"[45]  Betts then posits that, when appealing a misconduct through DC-ADM 801 to the Program Review Committee, there are only three bases for appeal and none of them include asserting that a misconduct was issued as retaliation for

---

inmates "cannot grieve misconducts" under DC-ADM 804.  Doc. 101 ¶ 7.  Betts, however, provides no evidence to support these allegations.

[42]   *See* Doc. 87-2 at 9.
[43]   *See generally* Doc. 87-2.
[44]   *See* Doc. 100 at 2-4.
[45]   DC-ADM 804 § 1(A)(7).

protected First Amendment conduct.[46]  Betts maintains that, when read together, these policy provisions render administrative remedies unavailable for his specific retaliation claim.

The Court need not wade into the uncertain waters involving the interplay between DC-ADM 804 and DC-ADM 801 when the basis for the retaliation claim is an allegedly fabricated misconduct.[47]  That is because Betts' retaliation claim fails on the merits.

### B.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[48]  To establish a First Amendment retaliation claim, a plaintiff must show that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the

---

[46]  *See* Doc. 100 at 4; COMMONWEALTH OF PA., DEP'T OF CORR., INMATE DISCIPLINE, Policy No. DC-ADM 801 § 5(A)(1)(a)-(c) (hereinafter "DC-ADM 801").

[47]  *See Grisby v. McBeth*, 810 F. App'x 136, 138 n.1 (3d Cir. 2020) (nonprecedential) (noting that there is a "serious question" whether administrative remedies are available to exhaust prisoner retaliation claims based on adverse action of misconduct charge).

[48]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[49]

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[50] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[51] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[52] Another approach is to demonstrate "a pattern of antagonism coupled with timing."[53] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[54] Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[55]

If a prisoner-plaintiff can establish a *prima facie* retaliation case, the burden shifts to the defendant or defendants to show that "they would have made the same

---

[49]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[50]  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[51]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[52]  *Id.*

[53]  *DeFlaminis*, 480 F.3d at 267.

[54]  *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

[55]  *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[56]  This is often referred to as the "same decision defense."[57]

As to his *prima facie* case, Betts' fails to carry his Rule 56 burden in multiple respects.  First, he has failed to adduce evidence showing an adverse action taken by McCloskey or Wertz.  Indeed, the misconduct at issue—D520841—was investigated and issued by Eberling.[58]  Betts has not proffered *any* evidence that McCloskey or Wertz played a role in issuing or prosecuting this misconduct.[59]

Betts alleges, without evidentiary support, that McCloskey attempted to convince him to withdraw the grievance and notified him that he was under investigation for attempting to introduce drugs into SCI Huntingdon.[60]  These actions, however, are not sufficient to deter a person of ordinary firmness from

---

[56]  *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).

[57]  *Id.*

[58]  *See* Doc. 87 ¶ 15; Doc. 87-4 at 3.

[59]  Betts points to McCloskey's discovery responses as proof that McCloskey was involved in the issuance of the misconduct.  He argues that, in McCloskey's response to requests for admission, McCloskey admitted that he did not know anything about the investigation pertaining to the misconduct and was not involved in it.  *See* Doc. 100 at 5 (citing Doc. 101-2).  Betts then references a supplemental response to his request for production of documents about the February 13, 2020 legal mail incident, in which McCloskey produced Betts' misconduct history.  *See id.* (citing Doc. 101-3).  Betts appears to contend that this proves McCloskey was involved in the misconduct.  *See id.*  However, McCloskey clarified that his supplemental discovery response was simply a broad response regarding issues raised in Betts' complaint and an attempt to produce all relevant evidence concerning Betts' retaliation claim.  *See id.*  The Court discerns no nefarious or inculpatory interpretation of McCloskey's supplemental production of documents, nor does this good-faith production contradict McCloskey's plain admissions that he was not involved in the investigation of the misconduct.

[60]  *See* Doc. 100 at 8-9.

exercising his First Amendment rights, and that remains true even if Betts is alleging that McCloskey's notice of the drug investigation was a veiled threat.[61] Furthermore, Betts provides no allegations or evidence with respect to any adverse action taken by Wertz. He simply proclaims, without evidentiary support, that Wertz, McCloskey, and Eberling were "all acting in concert to cause false misconduct charges to be filed against [him.]"[62] This type of speculation is wholly insufficient at summary judgment.[63]

Betts also encounters problems at the third element—causation—for both McCloskey and Wertz. That is, Betts has failed to proffer evidence of a causal

---

[61] *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (nonprecedential) (finding that "verbal threats and few gestures of racial harassment" plaintiff experienced were "not sufficiently adverse to support a retaliation claim" under the facts of that case); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (nonprecedential) (noting that "threats alone do not constitute retaliation") (citing *Maclean v. Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995) (collecting cases)); *Snider v. Alvarez*, No. 18-cv-801, 2020 WL 6395499, at *17 & n.166 (M.D. Pa. Nov. 2, 2022) (collecting cases); *Cooper v. Sherman*, No. 17-cv-2064, 2019 WL 2408973, at *7 (M.D. Pa. June 7, 2019) ("It is well settled, however, that verbal threats or verbal harassment . . . do not constitute adverse action for purposes of establishing a First Amendment retaliation claim."); *Bartelli v. Lewis*, No. 04-cv-908, 2005 WL 2406048, at *2 (M.D. Pa. Sept. 29, 2005) ("[V]erbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim[.]"); *see also Naranjo v. Walter*, No. 22-3435, 2023 WL 5928506, at *3 (3d Cir. 2023) (nonprecedential) (finding that threat to issue misconduct if inmate filed unfounded sexual abuse claim was insufficient to establish an adverse action for retaliation claim); *Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013) (nonprecedential) (finding that verbal threat to issue misconduct did not sufficiently state an adverse action for retaliation claim).

[62] Doc. 33 ¶ 79.

[63] *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (explaining that, at summary judgment, "the non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." (alteration omitted) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014))).

connection between his protected conduct, grievance 850652, and the misconduct issued by Eberling. This absence of causal evidence is largely due to the fact that, although Wertz and McCloskey were involved in the grievance and its investigation,[64] there is no evidence that they participated in the adverse action (*i.e.*, issuing or prosecuting misconduct D520841). Without committing or participating in any adverse act, it thus follows that Betts cannot establish that his protected conduct was a "substantial or motivating factor" for Wertz's or McCloskey's actions.

This leaves Betts' *prima facie* retaliation case against Eberling. There is no dispute that Betts' grievance was protected conduct and that Eberling's issuance of a misconduct that resulted in discipline could be considered adverse action. The question is whether Betts can establish a causal link between his protected conduct and the misconduct issued by Eberling. After careful consideration, the Court finds that Betts has failed to proffer evidence of causation with respect to Eberling's actions.

The Court initially observes that neither the grievance nor its appeals indicate that Betts was targeting Eberling or allege that Eberling was involved with the incident underlying grievance 850652.[65] It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like

---

[64] *See* Doc. 87-2 at 6-7; Doc. 101-2 at 2.
[65] *See generally* Doc. 87-2.

a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.[66]  Such general assertions fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the adverse action.

Betts argues that (1) his interactions with McCloskey (during McCloskey's investigation of grievance 850652) prior to the issuance of misconduct D520841, and (2) the suggestive timing (16 days between the filing of the grievance and the misconduct) suffice to show causation.[67]  He then contends, in conclusory fashion, that "[a]ll these things were done because [he] filed grievance 850652 and refused to withdraw said grievance."[68]

Even assuming that such interactions could show a causal relationship with respect to McCloskey (which would not matter, because McCloskey took no adverse action), they do not do so for Eberling.  After all, the grievance did not name or target Eberling; rather, it concerned legal mail handling by Wertz and "A.

---

[66]  *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

[67]  *See* Doc. 100 at 8-9.

[68]  *Id.* at 9.

McCloskey" (not to be confused with defendant J. McCloskey).[69]  The prior interactions with McCloskey likewise fail to show that Eberling had *knowledge* of Betts' grievance.  Rather, at best, they demonstrate that "Security Lieutenant"[70] McCloskey had knowledge of the misconduct investigation on March 5, 2020, the day the misconduct issued.[71]

In sum, Betts has failed to provide evidence to support his *prima facie* First Amendment retaliation case against Wertz, McCloskey, or Eberling.  Summary judgment, therefore, must be granted in these Defendants' favor on this Section 1983 claim.

Assuming, only for the sake of argument, that Betts has proffered sufficient evidence to establish a *prima facie* retaliation case against McCloskey or Eberling, his claim still fails because his misconduct charges were either admitted or upheld following a hearing and on appeal.  In other words, Defendants "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[72]

Initially, it is undisputed that Betts pled guilty to one of the charges asserted in misconduct D520841: unauthorized use of the mail, telephone, or kiosk.[73]  This

---

[69]  *See* Doc. 87-2 at 6-7, 9.

[70]  Doc. 101-4 at 2.

[71]  *See Moore*, 461 F.3d at 351 (explaining that a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity").

[72]  *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).

[73]  Doc. 87 ¶ 16.

admission alone provides substantial support that the misconduct was issued for a legitimate penological purpose.

Then, after a disciplinary hearing, Betts was found to have committed the other two charges (possession or use of a dangerous or controlled substance and possession of contraband), and these offenses were upheld through all levels of the misconduct appeal process.[74]  The hearing examiner based his decision on "inmate Betts' guilty plea . . . [,] Lt. Eberling's report, in-camera testimony, phone calls, and GTL message evidence" and found by a preponderance of the evidence that Betts had committed each of the charged offenses.[75]  Accordingly, Defendants have established, by presenting a "quantum of evidence,"[76] that the misconduct against Betts would have issued for a legitimate penological interest regardless of any purported retaliatory animus.[77]  This conclusion is yet another reason why summary judgment must be granted in Defendants' favor on Betts' First Amendment retaliation claim.

Betts' arguments for why the misconduct was allegedly fabricated are meritless.  He quibbles with the misconduct form and how it was filled out, but none of his assertions undercut the evidence presented at the hearing and relied

---

[74]  *See generally* Doc. 87-4.

[75]  *See id.* at 7.

[76]  *See Williams v. Folino*, 664 F. App'x 144, 149 (3d Cir. 2016) (nonprecedential) (citing *Watson*, 834 F.3d at 426).

[77]  *See Watson*, 834 F.3d at 425 (noting that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence").

upon by the hearing examiner.  Betts additionally argues that, in responses to interrogatories, Eberling noted that he did not issue the misconduct until March 5, 2020, because he had not reviewed certain evidence until that day.  Eberling, however, appears to have written "2/5" instead of "3/5" in his initial interrogatory responses and subsequently admitted that his review of evidence took place on "February 5, 2020" instead of "March 5, 2020" in later discovery responses.[78]  This scrivener's error during discovery does not establish that the misconduct was fabricated.  As Betts himself observes, Eberling could not have reviewed GTL messages on February 5, 2020, that did not occur until later that month.[79]  Rather than implicate a grand conspiracy, the more logical answer is that Eberling simply erroneously stated "2/5" rather than "3/5" in his initial interrogatory response. This minor drafting error is further confirmed when Eberling—in that same interrogatory response—states that the GTL messages were reviewed "the same day [he] authored the inmate misconduct," *i.e.*, March 5, 2020.[80]

Betts' attempt to fully relitigate the misconduct at issue is misguided. Federal courts must afford prison officials "broad discretion" with respect to prison disciplinary matters and prison security.[81]  "Given the quantum of evidence of [Betts'] misconduct, [the Court] cannot say that prison officials' decision to

---

[78]  *See* Docs. 101-9; 101-10.
[79]  *See* Doc. 100 at 11, 12.
[80]  *See* Doc. 101-9 at 2.
[81]  *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

discipline [Betts] for his violations of prison policy was not within the 'broad discretion' that we must afford them."[82]

## C.    Section 1983 Conspiracy

The Court need not spend significant time on Betts' Section 1983 conspiracy claim.  This claim fails as a matter of law because there was no underlying constitutional violation.  To prove a civil rights violation for conspiracy, a plaintiff must show that government actors "'reached an understanding' to deprive him of his constitutional" or federally protected rights.[83]  Betts, however, has not established an underlying First Amendment violation, and therefore he cannot establish a civil rights conspiracy claim involving that alleged violation, either.[84]

## D.    State-Law Negligence

Betts' remaining claims allege negligence under Pennsylvania law.  He asserts that multiple Defendants were negligent with respect to the handling of a second piece of legal mail that he claims was not delivered to him on February 13, 2020.[85]

---

[82]   *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002) (quoting *Thornburgh*, 490 U.S. at 413).

[83]   *Jutrowski*, 904 F.3d at 293-95 (citations omitted).

[84]   *See Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.") (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

[85]   *See* Doc. 33 ¶¶ 73-75.

The Court makes three observations regarding Betts' negligence claims. First, and most importantly, because Betts' federal claims fail at summary judgment, the Court declines to exercise supplemental jurisdiction over his state-law negligence claims.[86]  Second, despite Defendants' repeated assertions to the contrary, this Court has already determined that state statutory sovereign immunity does not bar Betts' negligence claims with respect to the handling of the alleged second legal letter (*i.e.*, personal property in Defendants' control).[87]  Defendants' argument that, for the statutory exception to immunity in Section 8522(b)(3) to apply, "the personal property at issue must have been the item that is alleged to cause the injury,"[88] is contradicted by a robust consensus of Third Circuit cases.[89]

Third, although not mentioned by Defendants, the Court questions whether Betts can plausibly state a claim for negligence.  Under Pennsylvania law, to establish the tort of negligence, a plaintiff must show that "the defendant owed a

---

[86]  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

[87]  *See* Doc. 22 at 14-15; 42 PA. CONS. STAT. § 8522(b)(3).

[88]  Doc. 88 at 23.

[89]  *See, e.g.*, *Hernandez v. Corr. Emerg. Response Team*, 771 F. App'x 143, 144-45 (3d Cir. 2019) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies for loss of or damage to personal property in DOC's possession and specifically citing 42 PA. CONS. STAT. § 8522(b)(3) as an adequate post-deprivation remedy); *Meekins v. DOC's Graterford*, 745 F. App'x 443, 444 (3d Cir. 2018) (nonprecedential) (same); *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (same).

duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages."[90]  Here, Betts contends that Defendants confiscated one of his two legal letters on February 13, 2020, and refused to return it to him.  Defendants have ardently maintained— throughout the entire grievance process and this lawsuit—that the second legal letter was mistakenly opened in Betts' presence and actually belonged to a different inmate.[91]  Betts refuses to accept this explanation, despite substantial evidence supporting it.

However, in both his initial and amended complaints, Betts recounts that the mailroom employees opened this second piece of legal mail in his presence and allowed him to review its contents before taking it back from him.[92]  Oddly, Betts then alleges in his amended complaint—the operative pleading—that he essentially has no idea what this second letter was about.  Betts avers, under penalty of perjury,[93] that he "*does not know* who the legal mail was from.  It very well *may have* been from an *attorney, foundation, or organization*[] contacting prisoners about presenting constitutional claims on appeal.  Defendants *may have* cost

---

[90]   *Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund*, 73 A.3d 543, 563 n.17 (Pa. 2013) (quoting *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009)).

[91]   *See, e.g.*, Doc. 87-2 at 6-7 (denying Betts' grievance and explaining that only one piece of legal mail was meant for Betts and that mailroom employees accidentally opened another inmate's legal letter in Betts' presence); Doc. 87 ¶ 2.

[92]   *See* Doc. 1 ¶¶ 22-23; Doc. 33 ¶¶ 24-28.

[93]   *See* Doc. 33 p. 29.

plaintiff a chance to present said claims in court."[94]  Thus, it appears from Betts'

verified pleading that he has no idea if he was injured by Defendants' purportedly

negligent actions, which raises significant concerns about whether Betts has

adequately alleged or can prove that he was harmed and suffered "actual loss or

damages"—the final element in a negligence claim.  Nevertheless, this issue was

not raised by Defendants or briefed by the parties, and the Court declines to

exercise jurisdiction over these remaining state-law negligence claims.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to

Betts' Section 1983 claims.  The Court declines to exercise supplemental

jurisdiction over Betts' remaining state-law claims.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[94]   *Id.* ¶ 75 at p. 23 (emphasis added).